IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GENESIS HILL,

      Petitioner,

    v.                        **Case No. 1:98-cv-452**
                                   **JUDGE EDMUND A. SARGUS, JR.**
**BETTY MITCHELL, Warden,**       **Magistrate Judge Terence P. Kemp**

      Respondent.

## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. § 2254. This matter is before the Court upon four motions: (1) Petitioner's motion for reconsideration of the Court's September 27, 2007 *Opinion and Order* denying discovery on ground twenty-three (Doc. # 197); (2) Petitioner's motion for *in camera* inspection of documents and to compel discovery (Doc. # 202); (3) Respondent's motion to dismiss ground twenty-one (Doc. # 204), which is also an opposition to Petitioner's motions for reconsideration and to compel discovery; and (4) Petitioner's motion to expand the record (Doc. # 203).

### Petitioner's Motion for Reconsideration (Doc. # 197)

Petitioner's motion for reconsideration (Doc. # 197) stems from his goal to have this Court recognize as cognizable, and grant discovery on, his twenty-third ground for relief alleging that the lethal injection process that Ohio has in place by which to execute him violates his Eighth Amendment right to be free from cruel and unusual punishment. On September 27, 2007, this Court issued an *Opinion and Order* denying Petitioner's motion for leave to conduct discovery on his claim, reasoning that he could not demonstrate good cause to conduct discovery on a claim that was not cognizable in habeas corpus and was properly brought in a civil rights action under 42 U.S.C. § 1983. The Court relied on the Supreme Court's decision of *Hill v. McDonough*, 547 U.S. 573 (2006), as holding that method-of-execution challenges had to be raised in § 1983 rather than habeas corpus. Petitioner asserts that since the Court's decision, the

legal and factual landscape defining how method-of-execution challenges may be litigated has changed, clarifying that method-of-execution challenges *may*—but not necessarily *must*—be raised in an action filed under § 1983. (Doc. # 197, at 10.)

Petitioner explains that following the United States Supreme Court's plurality decision in *Baze v. Rees*, 128 S.Ct. 1520 (2008), which decision, Petitioner concedes, addressed the constitutionality of Kentucky's execution protocol brought in a §1983 suit rather than a habeas corpus action, two panels of the United States Court of Appeals for the Sixth Circuit have remanded habeas corpus cases to the district court, "explicitly acknowledg[ing] that a constitutional challenge to Ohio's lethal injection protocols, procedures, policies, and processes is a cognizable habeas claim...." (Doc. # 197, at 8-9, citing *Adams v. Bradshaw*, No. 07-3688 (6th Cir. Feb. 13, 2009), and *Jones v. Bradshaw*, No. 07-3766 (6th Cir. Jan. 30, 2009).) Petitioner further notes that upon remand, where the respondents sought dismissal of the claims on the ground that the claims sounded only in §1983, not habeas corpus, the district court rejected that argument, reasoning that the *Baze* had changed the legal landscape and that the district court was bound to act in accordance with the Sixth Circuit's mandate remanding the claims for discovery and factual development. (Doc. # 197, at 9.) Petitioner asserts that the same reasoning applies to his claim and compels this Court to reverse course and not only acknowledge that Petitioner's claim challenging the constitutionality of Ohio's lethal injection protocol is cognizable in habeas corpus but also grant Petitioner leave to conduct discovery on the claim. To the first point, Petitioner emphasizes that he is not just challenging the manner in which Ohio intends to execute him, which challenge Petitioner concedes could only be brought in §1983; rather, he is challenging the fact of his death sentence, which challenge, according to Petitioner, properly lies in habeas corpus. (*Id*. at 10-11.)

Concerning the latter argument, Petitioner asserts that he can demonstrate good cause for discovery and that this Court should reconsider its decision denying his motion for leave to conduct discovery. In habeas corpus, discovery is conducted only by leave of the district court

2

upon a showing of good cause by the petitioner. The petitioner demonstrates good cause when he shows that the facts underlying his claim, if more fully developed through the discovery he seeks, may entitle him to relief. In the instant case, Petitioner points to the plurality's decision in *Baze* explaining that a capital inmate can demonstrate an Eighth Amendment violation where the inmate shows that the state's method of execution presents a substantial risk of serious harm or where the state has rejected a feasible, readily implemented alternative execution procedure. (Doc. # 197 at 14-15, citing *Baze*, 128 S.Ct. at 1531.) Petitioner argues that the discovery he seeks will enable him to develop the facts necessary to prove an Eighth Amendment violation.

Petitioner asserts that "[m]uch has changed" in Ohio's execution procedures both legally and factually in the two years since this Court rejected his request to conduct discovery. Petitioner notes that has Ohio has changed its execution protocol twice, most recently from a three-drug intravenous protocol to a single-drug intravenous protocol, with a "Plan B" backup procedure involving the use of one or more intramuscular injections. Petitioner also points out that Ohio botched the September 15, 2009 of Romell Broom by failing after two hours to establish intravenous access. Petitioner asserts that the first three executions following the November 2009 implementation of the new protocol were problematic, that the new protocol fails to address certain administrative problems, such as a substantial pattern of deviations from the written policy's mandates, and that the "Plan B" backup procedure is untested, experimental, and fraught with unacceptable risks of substantial pain.

The discovery that Petitioner seeks is permission to participate in the discovery already being conducted in *Cooey v. Strickland, et al.*, Case No. 2:04-cv-1156, a §1983 action pending in this Court before the Honorable Gregory L. Frost. Petitioner explains that a considerable volume of discovery has taken place in that case and continues with every execution. Petitioner notes that although there is a protective order in place in *Cooey* that prohibits dissemination of any information learned during discovery in that case to anyone other than the named litigants in that case, one of Petitioner's attorneys is also a counsel of record in *Cooey*, and there is precedent for

3

allowing others access to the material so long as they agree to be bound by the terms of the protective order. (Doc. # 197, at 18-19.)

The Court granted Respondent's request to file a single response to Petitioner's claims following resolution of the pending discovery disputes. However, Respondent never filed a response to Petitioner's motion for reconsideration of the Court's order denying discovery on his twenty-third ground for relief. It is not necessary now for the Court to allow Respondent to respond because the Court finds Petitioner's motion not well-taken and denies it. Even assuming Petitioner is correct that the method-of-execution challenge that he raises in his twenty-third ground for relief is cognizable in habeas corpus–a finding the Court will assume for purposes of this motion–Petitioner nonetheless has not satisfied the "good cause" showing necessary to permit him to conduct discovery on the claim.

In *Hill v. McDonough*, the Supreme Court held that the proper vehicle for raising Eighth Amendment method-of-execution challenges was in a §1983 action. In so doing, the Supreme Court did not address whether such challenges <u>had</u> to be raised in §1983, leaving open the question whether such challenges <u>could</u> be raised in habeas corpus. In support of his argument that method-of-execution claims may be raised in either forum, Petitioner relies on two habeas corpus cases originating in the Northern District of Ohio. In those cases, according to Petitioner, "the Sixth Circuit explicitly acknowledged that a constitutional challenge to Ohio's lethal injection protocols, procedures, policies, and processes is a cognizable habeas claim, first by granting Certificates of Appealability to the respective petitioners, and then by remanding the cases to the district court for discovery and factual development of the claims in light of *Baze*." (Doc. # 197, at 8, citing *Adams v. Bradshaw*, No. 07-3688 (6th Cir. Feb. 13, 2009), and *Jones v. Bradshaw*, No. 07-3766 (6th Cir. Jul. 23, 2008).) Petitioner asserts that those Sixth Circuit panels relied on the Supreme Court's decision of *Baze v. Rees*, 128 S.Ct. 1520 (2008), where a plurality upheld the constitutionality of Kentucky's execution protocol and procedure. Petitioner also notes that on remand, the district court in both cases denied motions to dismiss the method-of-

4

execution challenges as not cognizable in habeas corpus, reasoning that *Baze* had changed the legal landscape concerning method-of-execution challenges and that it was bound by the Sixth Circuit's mandate directing it to reexamine the claims, even in habeas corpus.

Petitioner did not cite and this Court is not otherwise aware of any authority holding definitively that following *Hill v. McDonough*, Eighth Amendment method-of-execution challenges may be raised either in habeas corpus or via a §1983 action. The Court need not resolve that issue now, and can do so when it issues a final decision on the merits of Petitioner's claims, because for purposes of this motion, Petitioner has not demonstrated that he is entitled to conduct discovery on his method-of-execution claim even assuming it does lie in habeas corpus.

As noted above, the discovery processes contained in the Federal Rules of Civil Procedure do not automatically apply in habeas corpus actions. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). In *Harris v. Nelson*, 394 U.S. 286, 295 (1969), the United States Supreme Court held that the "broad discovery provisions" of the Federal Rules of Civil Procedure did not apply in habeas corpus proceedings. As a result of the holding in *Harris*, the Rules Governing Section 2254 Cases in the United States District Courts were promulgated in 1976. Specifically, Rule 6(a) provides--

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Under this "good cause" standard, a district court should grant leave to conduct discovery in habeas corpus proceedings only "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is ... entitled to relief....'" *Bracy*, 520 U.S. at 908-909 (quoting *Harris*, 394 U.S. at 300). *See also Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004); *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). In keeping with the well settled principle that habeas petitioners are not entitled to go on a fishing expedition in search of damaging evidence, this "good cause" standard requires

the petitioner to at least attempt to identify what he expects to uncover through his discovery requests. *See Williams v. Bagley, supra*, 380 F.3d at 976.

The Court is not persuaded that Petitioner may, if the facts are more fully developed through the discovery he seeks, be able to demonstrate that he is entitled to relief on his Eighth Amendment method-of-execution claim. That is so because it appears that Petitioner's claim, whether raised in habeas corpus or by way of §1983, is all but foreclosed by Sixth Circuit precedent. In order to prevail on his claim that his death sentence is unconstitutional because the process that Ohio has in place to execute him violates his Eighth Amendment right to be free from cruel and unusual punishment, Petitioner must demonstrate that Ohio's procedure creates "an 'objectively intolerable risk of harm' or 'a demonstrated risk of severe pain' that is 'substantial when compared to the known and available alternatives.' " *Cooey v. Strickland*, 589 F.3d 210, 215 (6th Cir. 2009) (quoting *Baze v. Rees*, 553 U.S. 35, 128 S.Ct. 1520, at 1531, 1537). In the *Cooey* decision cited above, the Sixth Circuit denied Plaintiff-Intervenor Kenneth Biros's motion for a preliminary injunction to stay his execution, concluding that the plaintiff could not demonstrate a substantial likelihood of success on his multi-faceted challenge to Ohio's execution protocol because his claims were without merit. To be clear, although the Sixth Circuit was presented with Biros's challenges not on their merits but in the context of his motion for a temporary or preliminary injunction to stay his execution, the Sixth Circuit nonetheless explicitly found that Biros's challenges were without merit. Following *Cooey (Biros)*, 589 F.3d 210, several different panels of the Sixth Circuit have denied stays of execution and at least implicitly upheld the constitutionality of Ohio's execution protocol, procedures, policies, and processes. *Cooey (Beuke) v. Strickland*, 604 F.3d 939 (6th Cir. 2010); *Reynolds v. Strickland*, 598 F.3d 300 (6th Cir. 2010); *Reynolds (Brown) v. Strickland*, 363 F.App'x 394 (6th Cir. 2010).

Moreover, Petitioner's request for discovery is additionally foreclosed by language in *Cooey (Biros)* holding that not even anecdotal evidence of prior mishaps or speculations about future mishaps are sufficient to establish the showing necessary to prevail on an Eighth

6

Amendment challenge to Ohio's execution protocol. By way of reminder, the discovery that Petitioner seeks essentially consists of access to and incorporation of the myriad and extensive discovery being conducted in *Cooey v. Strickland, et al.*, Case No. 2:04-cv-1156–a §1983 action pending in this Court before the Honorable Gregory L. Frost. The information consists of information about prior executions, including mishaps and deviations from the written protocol. It does not appear, however, that such discovery could ever yield information that would enable Petitioner to prevail on his Eighth Amendment method-of-execution claim, in view of the Sixth Circuit's pronouncement in *Cooey (Biros)* that, "[s]peculations, or even proof, of medical negligence in the past or in the future are not sufficient to render a facially constitutionally sound protocol constitutional." 589 F.3d at 225. The discovery also consists of information about the qualifications, training, experience, and supervision of the execution team members. But the Sixth Circuit expressly considered and rejected that challenge in *Cooey (Biros)*. 589 F.3d at 226-28. Finally, the discovery also consists of information about Ohio's back-up execution method, or "Plan B;" but again, the Sixth Circuit has addressed and rejected any wholesale challenge to that facet of Ohio's execution protocol. *Id.* at 229-32. In view of the foregoing, it is not surprising that since the parties completed their briefing on this matter, at least one panel of the Sixth Circuit declined to certify for appeal a habeas corpus claim challenging Ohio's execution protocol. In *Treesh v. Bagley*, the Sixth Circuit declined to enlarge the petitioner's certificate of appealability on his claim challenging the manner in which Ohio carries out lethal injections, finding on the basis of *Cooey (Biros)* that the petitioner had failed to make a substantial showing of the denial of a constitutional right. No. 07-3524, 2010 WL 2771869, at * 12 (6th Cir. Jul. 13, 2010).

For the foregoing reasons, the Court cannot find that Petitioner has shown good cause sufficient to warrant leave to conduct discovery on the Eighth Amendment method-of-execution challenge set forth in his twenty-third ground for relief. Accordingly, the Court **DENIES** Petitioner's motion **(Doc. # 197)** for reconsideration of the Court's *Opinion and Order* denying

Petitioner's motion for leave to conduct discovery on his twenty-third ground for relief and renewed motion to conduct discovery.

### Petitioner's Motion for *In Camera* Inspection and to Compel Discovery (Doc. # 202)

### Respondent's Motion to Dismiss Ground Twenty-One (Doc. # 204)

On September 27, 2007, this Court issued an *Opinion and Order* granting in part and denying in part Petitioner's motion for leave to conduct discovery. Relevant to the instant motion is this Court's order granting Petitioner's request to conduct discovery on his twenty-first ground for relief alleging that the prosecution sought the death penalty against him because of his race in violation of Petitioner's rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Although cautioning that Petitioner faced an "uphill battle" in proving that the prosecution exercised discriminatory intent in pursuing a capital indictment against him, the Court nonetheless found that Petitioner had demonstrated good cause to conduct the following discovery:

1. From Petitioner's First Request for Admission, attached as Exhibit A to his motion for leave to conduct discovery, responses to questions 1 through 7 (Doc. # 155-2, at 4-6);

2. From Petitioner's First Set of Interrogatories, attached as Exhibit A to his motion for leave to conduct discovery, responses to questions 1 and 2 (Doc. # 155-2, at 14);

3. From Petitioner's First Requests for Production of Documents, attached as Exhibit A to his motion for leave to conduct discovery, production of requests in numbers 1 and 3 (Doc. # 155-2, at 15-16);

4. Depositions of Steven M. Tolbert, Esq. and Jerome A. Kunkel, Esq. on the Hamilton County, Ohio prosecutor's office policies, procedures, and guidelines regarding who should be charged with capital murder before and at the time of Genesis Hill's prosecution, and the decision to charge Genesis Hill with capital murder (Doc. # 155-3, at 1); and

5. Deposition of any other person, (within reason and as identified in response to interrogatory questions 1 and 2), who worked in the Hamilton County prosecutor's office at the time of Genesis Hill's prosecution who had or could have had knowledge of that office's policies, procedures, or guidelines, in place before or at the time, regarding who should be charged with capital murder, or who had

8

> or could have had knowledge of the reasons for charging Genesis
> Hill with capital murder (Doc. # 155-3, at 1-2).

(Doc. # 158, at 13-14.)

Petitioner asserts that although the depositions described above have been completed,

Respondent never served responses to any of the written discovery requests set forth above.

(Doc. # 202, at 4.) Following "extrajudicial" efforts between Respondent and Petitioner to

resolve the apparent dispute, Petitioner has explicitly "abandoned his requests for the Warden to

provide more thorough responses to his Requests for Admission and Interrogatories." (Doc. #

202, at 6.) Petitioner now seeks only the following: disclosure to Petitioner–or disclosure to the

Court for *in camera* inspection–of certain documents in Respondent's possession that may be

responsive to the discovery that this Court authorized in its September 27, 2007 *Opinion and

Order*. Specifically, Petitioner targets documents that Respondent listed in a "privilege log"

(Doc. # 202-5) accompanying a February 5, 2010 letter but that Respondent believed to be

unresponsive to the ordered discovery (Doc. # 202-7). Petitioner asserts that "[s]ome of the

vague and incomplete descriptions provided within this privilege log, however, suggest that the

documents may indeed be responsive to Hill's requests, and the entries in the log offer no support

for any form of 'privilege' that may protect the documents from disclosure to Hill." (Doc. # 202,

at 5-6.) Petitioner also asserts that Respondent's "privilege log" failed to comply with Fed. R.

Civ. P. 26(b)(5)(A) by failing to describe the documents in a manner that allowed Petitioner to

assess the claimed privilege. Finally, Petitioner asserts that the privilege issue may be moot

because subsequent statements made by Respondent suggest that no information set forth in the

documents qualifies them for a privilege. (Doc. # 202-7.)

In support of his request that Respondent submit the documents to the Court for *in

camera* review, Petitioner points out that it was Respondent herself who first suggested as much,

in her February 5, 2010 letter to counsel for Petitioner. Petitioner also asserts that district courts

have the authority to conduct *in camera* inspections of documents, that this Court intended in its

discovery order to permit Petitioner access to documents responsive to Petitioner's discovery

9

requests, and that this Court recognized that Petitioner did not appear to have any other means by which to obtain the information he sought. Petitioner contends that of the thirty-four categories of documents that Respondent listed in her privilege log, all of the documents listed could be relevant to Petitioner's discovery requests and none of the documents appear to qualify for a privilege. (Doc. # 202, at 7-8.)

Respondent argues that evidence from Petitioner's deposition of the trial prosecutor reveals that there is no factual dispute and that Petitioner's twenty-first ground for relief lacks merit and moves the Court to dismiss the claim. (Doc. # 204.) Petitioner points to the following statement made by Petitioner's trial prosecutor, Steven Tolbert, during his November 14, 2007 deposition: "I can tell you point-blank the race of the defendant was never a factor in determining how to proceed with one of these cases. That's just a fact." (Doc. # 204, at 4 (quoting Tolbert Transcript, Doc.# 204-2, at 52).) On the basis of that statement and other statements in Tolbert's deposition testimony, as well as Petitioner's concession that statistics regarding Hamilton County racial disparities are insufficient by themselves to establish discriminatory intent, Respondent urges this Court not only to deny Petitioner's request to compel discovery but also to dismiss Petitioner's twenty-first ground for relief pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. # 204, at 4-5.) In the alternative, Respondent argues that even assuming the Court declines to dismiss Petitioner's twenty-first ground for relief, the Court should nonetheless deny his request to compel discovery because Mr. Tolbert's deposition testimony establishes that there were no written polices, procedures, or guidelines concerning the decision of when, whether, or under what circumstances to pursue a capital indictment. Finally, Respondent states that she utilized a "privilege log" only as a means to list the documents and not because she is claiming that any documents qualify for a privilege. She states that her "position is clear: the documents do not relate to the discovery request and that is why the documents are not being disclosed." (Doc. # 204, at 7.)

Characterizing Respondent's motion to dismiss as procedurally improper, Petitioner

10

urges this Court to deny Respondent's motion and grant Petitioner's own motion to compel discovery on his twenty-first ground for relief. Petitioner reasons that this Court should resolve the discovery dispute concerning his twenty-first ground for relief before considering whether to enter judgment on the ground. Respondent having made clear that she opposes the compulsion of discovery of the disputed materials–not because the materials are privileged–but because they are not responsive to the Court's discovery order, Petitioner emphasizes that he seeks *in camera* review "precisely so that the Court – not the Warden – can determine whether any of the disputed material is, in fact, responsive to the Court-ordered discovery." (Doc. # 208, at 4.) Petitioner insists that "there are multiple reasons why the Court should question the Warden's determination that none of the Hamilton County documents in her possession are responsive to the broadly-worded discovery requests the Court agreed Hill should pursue with respect to his Twenty-First Ground." (*Id.* at 4-5.)

In her reply, Respondent asserts that the reason that she not only opposes Petitioner's motion to compel discovery on his twenty -first ground for relief but also seeks dismissal of the ground is because the discovery that has already been conducted has exposed the claim as "patently meritless." (Doc. # 210, at 1.) Respondent reiterates her position that the Hamilton County Prosecutor's Office documents that she possesses are not responsive to the discovery ordered by this Court. Another reason advanced by Respondent for why this Court should not compel Respondent to provide interrogatories, requests to admit, or production of documents is because the depositions that Petitioner conducted of Hamilton County prosecutors Steven Tolbert, Jerome Kunkel, and Arthur Ney demonstrate that there never were any written polices, procedures, or guidelines concerning when or under what circumstances Hamilton County should pursue a capital indictment. Based on the foregoing, Respondent argues that whether this Court examines the issue in the context of Respondent's motion to dismiss or a motion for summary judgment, the Court will reach the same conclusion–namely that there is no support for Petitioner's claim that race or any other improper factors motivated Hamilton County's decision

11

to seek the death penalty against Petitioner. (Doc. # 210, at 4.) Noting that a presumption of regularity cloaks the exercise of prosecutorial discretion absent clear evidence to the contrary, Respondent asserts that Petitioner has uncovered no evidence that his race motivated the decision by Hamilton County prosecutors to seek the death penalty against Petitioner. To that point, Respondent reiterates that statistics suggesting racial disparities, without more, are insufficient as a matter of law to demonstrate discriminatory intent. Respondent also points out that Assistant Prosecutor Steven Tolbert testified definitively in his deposition that race was not a factor in the decision to indict Petitioner with a capital offense. Respondent dismisses Petitioner's suggestion that inconsistencies between how Arthur Ney in 2007 described the indictment process in 1996 and how Steven Tolbert described the indictment process are indicative that race may have been a factor that was considered. Respondent also notes that Petitioner has conceded that he has been in possession since 2007 of the police's "Homicide Book" relating to the investigation of Petitioner's case–the only document, according to Tolbert's deposition, that was present during the decision making process of whether to seek a capital indictment against Petitioner. In view of the fact that Petitioner not only has deposed all of the prosecutors in his case but also is in possession of the only document that the prosecutors referenced in their decision to indict, Respondent reasons that "[i]f there was some proof of discrimination then it would seem Hill would have mentioned that sometime in the last two and a half years, such as in his Traverse." (Doc. # 210, at 5-6.) Respondent concludes by reiterating that neither Petitioner, nor Respondent, nor this Court have any way of knowing which, if any, documents from the prosecution's trial file were considered in the decision to indict, thereby rendering such documents unresponsive to this Court's discovery order.

In the final reply on this matter, Petitioner continues to ponder why Respondent is now balking at this Court's conducting an *in camera* review of documents from the prosecution's trial file–the procedure that, according to Petitioner, Respondent herself suggested no fewer than eleven times. (Doc. # 206, at 2.) Petitioner asserts that although he "might normally be willing

12

to accept at face value an opposing counsel's representation of non-responsiveness to a given document request, there are multiple factors in play here suggesting that the Court – not the Warden – should make that determination." (Doc. # 206, at 2-3.) One such factor, according to Petitioner, is Respondent's initial refusal to respond to any of Petitioner's discovery requests. Another factor advanced by Petitioner is the fact that the description of the documents in question provided by Respondent in correspondence with Petitioner gives reason to believe that the documents might very well be responsive, *i.e.*, pertaining to the Hamilton County prosecutor's office's decision to seek the death penalty against Petitioner. Petitioner asserts that it is difficult to believe that the categories of documents in Respondent's "privilege log"–such as "trial file," "police notes," "police homicide summaries," "witness lists and expected testimony," "crime laboratory report," "diagnostic assessments of Genesis Hill and interview of family members by clinical social worker," and "miscellaneous notes"–would not be responsive to Petitioner's discovery request for all documents pertaining to the Hamilton County prosecutor's office's decision to seek the death penalty against Petitioner.

Finally, any reliance by Respondent on the fact that Petitioner is in possession of the Homicide Book as a reason why Petitioner should not obtain discovery of documents in the prosecution's trial file, according to Petitioner, is "puzzling." (Doc. # 206, at 4.) Petitioner points out that Respondent opposed several requests by Petitioner for the "Homicide Book" and that Petitioner was only able to obtain it after utilizing a private investigator to make a public records request. Petitioner reasons that the very fact that Respondent concedes not knowing what prosecutors considered or discussed in determining to seeking a capital indictment against Petitioner "is all the more reason for the Court to review the documents that the Warden received from the County Prosecutor and order any responsive documents produced to Hill." (Doc. # 206, at 5.)

The Court notes, first, that the use of a privilege log to list materials which are not privileged but allegedly not relevant is improper. The only proper use of a privilege log under

13

Rule 26(b)(5)(A) is to assert a claim of privilege for information that is "otherwise discoverable." Lack of relevance or responsiveness is, of course, not a claim of privilege; it is an assertion that the information in question is not "otherwise discoverable." Further, because no privilege is being asserted, the production of this information to Petitioner's counsel–as opposed to production for an *in camera* inspection by the Court–would not be a waiver of privilege. Thus, whatever else may be said about this information, there is no basis for the Court to conduct an *in camera* review.

Second, the Court is not persuaded by Respondent's filings on this issue that the documents at issue are not responsive to the discovery requests that Petitioner has been permitted to serve. The Court agrees that the contents of the prosecutor's file may have some relation to the basis of the prosecutor's decision to seek the death penalty even if those documents do not contain direct evidence of a discriminatory intent. For example, if the file reveals no facts in this case which could distinguish the case from others where the race of the defendant was different, but where the death penalty was not sought, it might support Petitioner's claim. At the very least, the relatively relaxed standard for discovery relevance is met here. Thus, Respondent will be directed to make these documents available for inspection by Petitioner's counsel as part of the previously-ordered discovery.

For the foregoing reasons, the Court **GRANTS** Petitioner's motion for *in camera* review and to compel discovery **(Doc. # 202)** and **DENIES** Respondent's motion to dismiss Petitioner's twenty-first ground for relief **(Doc. # 204)**.

### Petitioner's Motion to Expand the Record (Doc. # 203)

Petitioner asks the Court to expand the record with the affidavit and curriculum vitae of Dr. Karen Salekin, a professor of psychology and clinical psychologist specializing in forensic assessment with an emphasis in the area of intellectual disability and the legal system. (Doc. # 203.) Petitioner asserts that "[i]t is important for the informed consideration of Hill's habeas claims that the Court expand the record to include the affidavit of Dr. Karen Salekin." (*Id.* at 5.)

14

Specifically, according to Petitioner, Dr. Salekin's affidavit is relevant to Petitioner's claim, currently being litigated in the state courts, that he is mentally retarded and therefore ineligible for the death penalty. Petitioner also asserts that the issue of whether he is mentally retarded is also relevant to his claims that he did not execute a constitutionally valid waiver of his *Miranda* rights or consent to search. Petitioner argues that he exercised due diligence in developing these facts because once newly appointed counsel determined that there existed significant evidence suggesting that Petitioner was mentally retarded, counsel undertook to raise and develop the claim, first by requesting of this Court an order of stay and abeyance in this Court and then by initiating in state court a petition pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002) asserting that Petitioner is mentally retarded and ineligible for the death penalty. Petitioner points out that the action "represent[s] the first time that an Ohio state court has considered whether it is unconstitutional to execute Hill based on his mental retardation." (Doc. # 203, at 5.) Petitioner also points out that "[i]n the time between Hill's trial and the completion of his state court litigation, it was not a violation of the Eighth Amendment to execute a mentally retarded person." (*Id.* at 5 (citing *Penry v. Lynaugh*, 492 U.S. 302, 334 (1989)).)

Respondent opposes expansion of the record on several grounds. (Doc. # 205.) The first reason that Dr. Salekin's affidavit should not be made a part of the record, according to Respondent, is that Petitioner failed to exercise due diligence in developing the claim in the state courts. Respondent maintains that Petitioner had the opportunity in 2002 to file his *Atkins* petition in the state courts, but waited until 2009 to do so, "well past the 180 days mandated by *State v. Lott*, 97 Ohio St. 3d 303 (2002)." (*Id.* at 1.) A second reason offered by Respondent for why this Court should not expand the record with Dr. Salekin's affidavit is that the affidavit has never been presented to the state courts. Third, according to Respondent, Dr. Salekin's affidavit is not relevant to any claims that Petitioner has before this Court. Respondent explains that Petitioner has no *Atkins*-based mental retardation claim before this Court and that should he attempt to raise one, Respondent will demonstrate that the claim is barred by procedural default.

15

Relying on *Garner v. Mitchell*, 557 F.3d 257, 263 (6th Cir. 2009), Respondent also asserts that he has demonstrated that information such as that set forth in Dr. Salekin's affidavit is not relevant to Petitioner's claims that neither his *Miranda* waiver nor consent to search were constitutionally valid. Respondent's final argument is that Dr. Salekin's affidavit, by virtue of being "a regurgitation of what is already in the record and inconclusive," would not assist this Court in resolving any of Petitioner's claims.

In reply, Petitioner begins by insisting that he has been diligent in developing his *Atkins* claim in the state courts and that his *Atkins* petition is not barred in state court. (Doc. # 207.) Petitioner explains that no state court has found his *Atkins* petition to be time-barred, that the petition is in fact still pending the state courts, and that Dr. Salekin's affidavit has been presented to the state courts in support of Petitioner's pending *Atkins* petition. Petitioner also disputes Respondent's assertion that Dr. Salekin's affidavit is inconclusive regurgitation of previously presented material. (*Id.* at 2.) The essence of Petitioner's argument is that Dr. Salekin's affidavit is "a new authoritative source [that] explains how this area has changed since 2002 when *Atkins* was decided." (*Id.*) Petitioner dismisses Respondent's argument that Dr. Salekin's affidavit is not relevant because Petitioner has not raised an *Atkins* claim before this Court, asserting that "this Court has already recognized that this very type of information is relevant to Hill's *Miranda* claims." (*Id.* (citing *Opinion and Order*, Doc. # 167, at 32).)

Rule 7 of the Rules Governing Section 2254 Cases confers on the Court the authority to expand the record with materials relating to the petition. The rule provides:

> (a) In General. If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.
>
> (b) Types of Materials. The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.
>
> (c) Review by the Opposing Party. The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

Rules Governing § 2254 Cases, Rule 7, 28 U.S.C. foll. § 2254.

The Court will deny Petitioner's motion without prejudice, subject to renewal. Without expressing any opinion about the cogency of Dr. Salekin's affidavit or whether the record should be expanded to include it, the Court finds for more than one reason that Petitioner's motion to add Dr. Salekin's affidavit to the record is premature. The claim to which Dr. Salekin's affidavit is primarily relevant, an "*Atkins*" claim alleging that Petitioner is mentally retarded and ineligible for the death penalty, is not before this Court. Even the claims before the Court to which Dr. Salekin's affidavit might be relevant–Petitioner's claims alleging that he was mentally incompetent to waive his *Miranda* rights or consent to a search of his residence–would only marginally be advanced by Dr. Salekin's affidavit under current Sixth Circuit law. Because Petitioner is presently exhausting in the state courts not only Dr. Salekin's affidavit, but also the "*Atkins*" claim to which the affidavit primarily relates, the prudent course of action is to deny at this time Petitioner's motion to expand the record with Dr. Salekin's affidavit.

Contrary to Petitioner's assertion, this Court has not found as the law of this case that the type of information set forth in Dr. Salekin's affidavit is relevant to Petitioner's claims that he was incompetent to knowingly, intelligently, and voluntarily execute a waiver of his *Miranda* rights and consent to search his residence. In a September 30, 2008 *Opinion and Order*, this Court denied Petitioner's motion for an evidentiary hearing on his claims that he was incompetent to waive his *Miranda* rights or consent to a search of his residence. (Doc. # 167.) In so doing, the Court noted that the information that Petitioner sought to develop during an evidentiary hearing–evidence attempting to establish his mental disability and resulting inability to competently waive constitutional rights–essentially was already part of the record by way of the detailed affidavits of Drs. Michael Gelbort and Robert Smith. (*Id.* at 32.) What Petitioner fails to acknowledge is the manner in which this Court qualified its statement.

In *Garner v. Mitchell*, 502 F.3d 394, 413-17 (6th Cir. 2009), the Sixth Circuit held that the petitioner's waiver of his *Miranda* rights was invalid because testing demonstrated that the

17

petitioner's mental incapacity rendered him unable to fully comprehend the warnings and his right to remain silent. On *en banc* review, however, the Sixth Circuit vacated that decision. The Sixth Circuit held that although mental incapacity was one factor to be considered in assessing the validity of a *Miranda* waiver, even when a suspect is actually unable to understand the meaning of *Miranda* warnings, the suspect's waiver of his *Miranda* rights is valid so long as interrogating officers had no knowledge of the suspect's mental disability. 557 F.3d 257, 262-63 (6th Cir. 2009). The Supreme Court let the decision stand and Mr. Garner has since been executed. Thus, under the most recent *Garner* decision, it is presently the law in the Sixth Circuit that a suspect's mental capacity to comprehend *Miranda* warnings and the right to remain silent is only one of many factors to be considered when determining whether the suspect executed a constitutionally valid waiver of those rights. That being so, without expressing any opinion about the cogency of Dr. Salekin's affidavit, the type of information set forth in Dr. Salekin's affidavit might be only marginally relevant to Petitioner's claims that he was incompetent to waive his *Miranda* rights or consent to a search of his residence.

Beyond the foregoing, the fact remains that Petitioner is asking the Court to expand the record with information relating to an issue that Petitioner has not yet fully exhausted in the state courts. The Court expresses no opinion whether Petitioner has been diligent in presenting his "*Atkins*" claim, and the facts supporting that claim, in the state courts; that issue is not properly before the Court yet and may never be. In short, it strikes this Court as premature to expand the record at this time. *Cf. Thompson v. Director*, Civil Action No. 6:08cv82, 2009 WL 816107, at * 8 (E.D. Tex. Mar. 26, 2009) (denying request to expand record with materials relating to unexhausted claims). Accordingly, Petitioner's motion to expand the record **(Doc. # 203)** is **DENIED** without prejudice, subject to renewal.

### Conclusion

For the foregoing reasons, the Court (1) **DENIES** Petitioner's motion for reconsideration of the Court's January 22, 2010 *Opinion and Order* denying discovery on ground twenty-three

18

**(Doc. # 197)**; (2) **GRANTS** Petitioner's motion for *in camera* review and to compel discovery **(Doc. # 202)**; (3) **DENIES** Respondent's motion to dismiss ground twenty-one **(Doc. # 204)**, which is also an opposition to Petitioner's motions for reconsideration and to compel discovery; and (4) **DENIES** Petitioner's motion to expand the record **(Doc. # 203)**.  The documents at issue shall be produced for inspection and copying within fourteen (14) days of the date of this order.

　　　**IT IS SO ORDERED.**


　　　　　　　　　　　　　　　　　　　　　　　/s/*Edmund A. Sargus, Jr.*
　　　　　　　　　　　　　　　　　　　　　　　EDMUND A. SARGUS, JR.
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

**DATE: September 30, 2010**